# United States District Court
# Central District of California

| | |
|---|---|
| JENNA NOBLE, <br><br> Plaintiff, <br><br> v. <br><br> DORCY, INC., a California corporation dba CONSCIOUS CO-PARENTING INSTITUTE; et al., <br><br> Defendants. | Case No. 2:19-cv-08646 ODW (JPRx) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS [152]** |

## I. INTRODUCTION

Plaintiff Jenna Noble moves for judgment on the pleadings as to Defendants Dorcy Pruter's and Dorcy Inc. dba Conscious Co-Parenting Institute's (collectively, "CCPI") counterclaims for breach of contract, intentional interference with prospective economic relations, and conversion. (Mot. J. on Pleadings ("Mot."), ECF No. 152.) For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Noble's Motion.[1]

---
[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Pruter is the owner and founder of Conscious Co-Parenting Institute, a California corporation that facilitates court ordered family reunification programs. (Defs.' Answer & Countercls. ("Countercls."), ECF No. 101.) Noble is CCPI's former employee. (*Id.*)

Noble's employment with CCPI commenced in 2018. (*Id.* ¶ 12.) On the first day of her training, Noble entered into a licensing agreement with CCPI ("Agreement"), which CCPI claims required her to "keep confidential the intellectual property of CCPI." (*Id.* ¶¶ 26, 29.) CCPI also contends that the Agreement stated CCPI would provide Noble with client leads, and Noble would be responsible for enrolling clients while processing and crediting their payments to CCPI. (*Id.* ¶ 8.) In 2019, Noble's employment with CCPI ended. (*See id.* ¶ 13.) After Noble left CCPI, she launched her own family coaching service called Pathways. (*Id.* ¶ 17.)

On August 14, 2019, Noble sued CCPI in state court alleging, among other things, claims for retaliation and breach of contract. (Notice of Removal, ECF No. 1.) CCPI removed the action to this Court. (*Id.*) Through its counterclaims, CCPI alleges that Noble used CCPI's intellectual property to establish her competing business, Pathways. (Countercls. ¶¶ 18, 20–22.) CCPI also alleges that it discovered Noble enrolled several clients into CCPI and asked those clients to make their payments to Noble's personal PayPal account. (*Id.* ¶ 10.) CCPI claims that they never received those payments. (*Id.*)

Based on the foregoing, CCPI answered Noble's Second Amended Complaint ("SAC") and asserted five counterclaims, four of which are relevant to the instant motion: breach of contract ("Counterclaim One"); intentional interference with prospective economic relations ("Counterclaim Two"); misappropriation of trade secrets ("Counterclaim Three"); and conversion ("Counterclaim Four"). (*See generally* Countercls.) Noble moves for judgment on the pleadings regarding CCPI's Counterclaims One, Two, and Four. (Mot.)

## III. LEGAL STANDARD

After the pleadings are closed, but within such time as to not delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ P. 12(c). The standard applied to a Rule 12(c) motion is essentially the same as that applied to Rule 12(b)(6) motions; a judgment on the pleadings is appropriate when, even if all the allegations in the complaint are true, the moving party is entitled to judgment as a matter of law. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." (citations omitted)); *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005).

When ruling on a motion for judgment on the pleadings, a court should construe the facts in the complaint in the light most favorable to the nonmoving party, and the movant must clearly establish that no material issue of fact remains to be resolved. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). However, "conclusory allegations without more are insufficient to defeat a motion [for judgment on the pleadings]." *Id.* If judgment on the pleadings is appropriate, a court has discretion to grant the non-moving party leave to amend, grant dismissal, or enter a judgment. *See Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

Noble moves for judgment on the pleadings on several grounds. First, Noble asserts that CCPI's Counterclaim One (breach of contract) fails to state a claim because the alleged breach is based upon a non-existent term. (Mot. 9.) Second, Noble argues

that CCPI's Counterclaims Two and Four (intentional interference with prospective economic relations and conversion) are preempted by California's Uniform Trade Secrets Act ("CUTSA") because they are "derivative of CCPI's misappropriation of trade secrets claim." (*Id.* at 5–7.)

The Court addresses CCPI's counterclaims in turn.

**A.    Counterclaim One (Breach of Contract)**

In Counterclaim One, CCPI alleges that Noble breached the Agreement by "utilizing CCPI's information and contacts for [her] own personal gain." (Countercls. ¶ 31.) Noble argues that CCPI fails to show her alleged use of CCPI's intellectual property was prohibited by the Agreement. (Mot. 9.) The Court rejects Noble's argument.

To plead the existence of a contract, CCPI must quote the terms of the purported contract, attach the contract to its counterclaims, or *clearly allege the substance of the relevant terms*. *See United Med. Devices, LLC v. Blue Rock Capital, Ltd.*, No. CV16–1255 PSG (SSx), 2016 WL 9047157, at *2 (C.D. Cal. Aug. 10, 2016) (quoting *Bassam v. Bank of Am.*, No. CV15–00587 MMM (FFMx), 2015 WL 4127745, at *4 (C.D. Cal. July 8, 2015)). As is relevant here, "confidential" information is that which is "meant to be kept secret." Black's Law Dictionary (11th ed. 2019).

CCPI clearly alleges the relevant substantive terms of the Agreement. Specifically, the Agreement's requirement that Noble "keep confidential the intellectual property of CCPI." (Countercls. ¶ 29.) CCPI claims that Noble breached that provision of the Agreement by "utilizing CCPI's information and contacts for [her] own personal gain." (*Id.* ¶ 31.) For instance, CCPI alleges that Noble used CCPI's intellectual property to construct a website and launch classes based upon CCPI's content. (*Id.* ¶ 18.) CCPI also alleges that Noble hosted a Facebook live event and "used specific words and phrases that [Defendant] Pruter uses in her marketing and live training." (*Id.* ¶ 22.) These allegations are sufficient to state a claim for breach of the Agreement's provision to keep confidential CCPI's intellectual property. Noble's conclusory

argument that the "keep confidential" provision does not extend to her use of CCPI's intellectual property for her own personal gain is nonsensical and unsupported by any authority.

Therefore, the Court **DENIES** Noble's Motion as to Counterclaim One (breach of contract).

**B.     CUTSA Preemption**

In Counterclaims Two and Four, CCPI alleges that Noble intentionally interfered with CCPI's economic relationships with its customers and that Noble intentionally interfered with CCPI's possession of funds, both causing harm to CCPI. (Countercls. ¶¶ 33–40, 51–54.)  Noble argues that these claims are preempted by the CUTSA because they are derivative of CCPI's misappropriation of trade secrets counterclaim.  (Mot. 6.)  Noble is correct.

The CUTSA's preemptive sweep is broad—it supersedes all claims "based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret." *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011); *JEB Grp., Inc. v. San Jose III*, No. CV 19-04230-CJC (AGRx), 2020 WL 2790012, at *3 (C.D. Cal. Mar. 31, 2020). "Determining whether a claim is based on trade secret misappropriation is largely factual." *JEB Grp.*, 2020 WL 2790012, at *3 (internal quotation marks omitted).  "At the pleadings stage, the [preemption] analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Id.* (quoting *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017)).  "Thus, a claim 'based on the same nucleus of facts as the misappropriation of trade secrets claim' is preempted by the CUTSA." *Id.* (quoting *K.C. Multimedia Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009)).

First, with respect to Counterclaim Two (intentional interference with prospective economic relations), CCPI fails to allege facts that are independent of its

trade secret misappropriation counterclaim. To illustrate, in CCPI's counterclaim for trade secret misappropriation, CCPI alleges that Noble disclosed and used CCPI's "trade secrets" (e.g., customer information, client lists, etc.) for her own benefit without CCPI's consent. (Countercls. ¶¶ 41–50.) Then, in Counterclaim Two, CCPI alleges Noble used "CCPI's confidential customer information," (i.e., trade secrets), to interfere with their economic relationships. (Countercls. ¶¶ 33–40.) Based on these allegations it is evident that Counterclaim Two clearly arises from the same nucleus of facts as CCPI's misappropriation of trade secrets counterclaim. (*See id.* ¶¶ 41–50, 33–40.) Therefore, the Court finds that Counterclaim Two (intentional interference with prospective economic relations) is preempted by CUTSA. *See Mattel*, 782 F. Supp. 2d at 987.

Second, with respect to Counterclaim Four (conversion), CCPI also fails to assert factual allegations that are independent of its trade secret misappropriation counterclaim. Here, CCPI alleges Noble interfered with CCPI's funds by enrolling clients and then taking possession of client funds without CCPI's authorization. (Countercls. ¶¶ 51–54.) Noble's alleged possession of CCPI's funds resulted from Noble's use of CCPI's confidential client lists and client information. (Mot. 7–8; *see* Countercls. ¶ 42.) The facts forming the basis of CCPI's counterclaim for conversion are identical to the allegations in its counterclaim for misappropriation of trade secrets—both rely on Noble's use of confidential customer information. (Countercls. 14–16.) Therefore, the Court finds that Counterclaim Four (conversion) is also preempted by CUTSA.

Accordingly, the Court **GRANTS** Noble's Motion to the extent she seeks to dismiss Counterclaims Two and Four.

///
///
///
///

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Noble's Motion for Judgement on the Pleadings (ECF No. 152) as follows:

1. The Motion is **GRANTED** as to CCPI's Counterclaim Two (intentional interference with prospective economic relations);
2. The Motion is **GRANTED** as to CCPI's Counterclaim Four (conversion);
3. The Motion is **DENIED** as to CCPI's Counterclaim One (breach of contract).

The Court **GRANTS** CCPI **leave to amend** Counterclaims Two and Four. If CCPI chooses to amend its pleading, it shall file amended counterclaims **within 21 days** of the date of this order. If CCPI files amended counterclaims, Noble shall file a response no later than **fourteen (14) days** from the date of the amended filing.

**IT IS SO ORDERED.**

July 1, 2021

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**